No. 59,400

GLADYS L. ALLISON, *et al., Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, *et al., Appellants.*

(737 P.2d 6)

Opinion filed May 1, 1987.

*Donald Jarrett*, chief counsel, Johnson County, argued the cause and was on the brief for appellants.

*Leonard O. Thomas*, of Thomas, McDonald, Maier, Dykes & Johnston, Chartered, of Overland Park, and *Robert B. Best, Jr.*, of Watson, Ess, Marshall & Enggas, of Olathe, argued the cause, and *Jon C. Christlieb, L. D. McDonald, Jr.,* and *J. Lawrence Louk*, of Thomas, McDonald, Maier, Dykes & Johnston, Chartered, of Overland Park; *Thomas E. Ruzicka* and *Amelia J. McIntyre*, of Watson, Ess, Marshall & Enggas, of Olathe; and *Byron J. Beck, Theresa L. F. Levings*, and *Pamela G. Kohler*, of Morrison, Hecker, Curtis, Kuder & Parrish, of Overland Park, were with them on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: The Board of County Commissioners of Johnson County (Board) appeals the district court's award to the plaintiffs under 42 U.S.C. § 1988 (1982) for attorney fees which exceeded $585,000, in five cases that were consolidated for trial.

Five separate lawsuits challenging the levy of special assessments to pay the cost of waste-water treatment facilities constructed in Blue River Main Sewer District No. 1 and Blue River Sewer Sub-Districts Nos. 5 and 6 were consolidated in the Johnson County District Court. Four of the actions developed in conjunction with *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 667 P.2d 879 (1983). A summary of the facts follows.

On June 26, 1978, the Board created Blue River Sewer Sub-District No. 5 to construct sewage collection facilities to serve approximately 2,504 acres. On September 5, 1978, the Board created Blue River Sewer Sub-District No. 6 to construct sewage collection facilities to serve approximately 336 acres.

On March 6, 1979, the Board created Blue River Main Sewer District No. 1 to construct a sewage treatment facility for sewage generated in Sub-Districts No. 5 and 6. Sub-Districts No. 5 and No. 6 were combined to form Main District No. 1, to serve 2,840 acres.

On January 26, 1982, the case of *Dutoit v. Board of Johnson County Comm'rs* was filed in Johnson County District Court to enjoin the levying of assessments of costs of improvements constructed in Sub-District No. 5, to set aside the order enlarging the district, and to exclude the plaintiffs' land from the district. On June 30, 1982, an amended petition was filed in *Dutoit*

alleging a class action and constitutional violations of the Fifth and Fourteenth Amendments of the United States Constitution. On August 24, 1982, a second amended petition was filed in *Dutoit* alleging a 42 U.S.C. § 1983 (1982) cause of action.

The Board filed a motion to dismiss all of the Dutoits' claims. On December 29, 1982, a journal entry of dismissal of all of the Dutoits' claims was filed. The Dutoits appealed. On July 15, 1983, we held that the district court had correctly dismissed the class action claims and the claims challenging the creation and enlargement of the Blue River Sub-District No. 5, but that the Dutoits' 42 U.S.C. § 1983 claim had been improperly dismissed. *Dutoit* was remanded for further proceedings.

On June 7, 1983, prior to our decision in *Dutoit*, the Board, as the governing body of Sub-District No. 6, levied assessments within that district to pay the costs of the public improvements. On June 17, 1983, the case of *Allison, et al. v. Board of County Commissioners* was filed in Johnson County District Court challenging the assessments levied in Sub-District No. 6. The case was also filed on behalf of Sub-District No. 5 and Main District No. 1 owners.

On November 10, 1983, the Board reassessed the costs of improvements in Sub-District No. 5, and the thirty-day appeal period was reinstated so as to allow other landowners to contest the Sub-District No. 5 assessments. Suits were then filed by the plaintiffs in all five consolidated cases, challenging those assessments.

Pleadings in the five cases are not identical, but contain similar claims for relief. Essentially, those pleadings included claims that the statute (K.S.A. 19-2704 *et seq.*) was unconstitutional, the districts were not lawfully created, the boundaries were arbitrary, misrepresentations were made, the Board abused its discretion, the method of assessment was improper, the assessments constituted inverse condemnation, the assessments were unreasonable, and the assessments violated plaintiffs' constitutional rights.

Trial of the consolidated cases commenced on February 25, 1985. On the third day of trial, after jury selection and opening statements, a settlement was reached. The essential terms of the settlement were that the assessments as levied would stand and

not be changed, the maximum amount that would be collected from all land within the districts was approximately $2,550 per acre, the costs would be divided approximately equally between the two sub-districts and the main district, all landowners would be treated the same, and the County would be precluded from assessing additional accrued interest and other costs not currently included within the assessments of record against the consolidated plaintiffs and the other landowners within the districts.

The settlement achieved a reduction in the assessments which the plaintiffs and all landowners within the districts were obligated to pay. The settlement was accepted by the court, and plaintiffs subsequently filed their requests for statutory attorney fees in excess of $850,000 under 42 U.S.C. § 1988. After hearings on the issues, the trial court awarded fees and expenses totaling more than $585,000. Defendants filed this appeal, opposing the fee award.

In Kansas the prevailing party in litigation is entitled to recover the costs of the action, but is not reimbursed for the litigation expenses and legal fees. Attorney fees incurred by the prevailing party are chargeable as costs against the losing party where specific statutory provisions allow recovery. *State, ex. rel., v. Sage Stores Co.*, 158 Kan. 146, 145 P.2d 830 (1944). Statutes which authorize attorney fees are designed to provide access to judicial relief for victims, providing an economic incentive for lawyers to represent their clients' interest.

The history of the purpose of The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, was set out by Justice Herd in *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983). By awarding attorney fees, 42 U.S.C. § 1988 insures that individual plaintiffs, as private attorneys general, are able to assert and vindicate their civil rights in court. Congress' purpose in adopting the Act was to assure that the opportunity to enforce federal civil rights would be available to all. The legislation gives effective access to the judicial process to the vast majority of the victims of civil rights violations who cannot afford legal counsel. It promotes the enforcement of the federal civil rights acts and achieves uniformity in those statutes and justice for all citizens. *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977).

Under proper circumstances, § 1983 actions may be brought against the United States, individual states, and local governments. The fact that any unit of government operates under some form of statutory procedure does not prevent an individual from challenging the constitutionality of the government's actions. See generally Annot., 43 A.L.R. Fed. 243, § 7. The principles of comity and the Tax injunction Act, 28 U.S.C. § 1341 (1982), prevent actions in the federal courts based on a claim of unequal taxation of property by a state. If a § 1983 claim exists due to a state's unequal taxation or unequal assessment of property, the action must be brought in the state court. *Fair Assessment in Real Estate Assn. v. McNary,* 454 U.S. 100, 70 L. Ed. 2d 271, 102 S. Ct. 177 (1981).

### State Remedies

The Board contends that § 1983 suits are not available where adequate state remedies are available and provide the proper due process requirements. Here, the Board contends, because plaintiffs could have obtained administrative review (K.S.A. 19-2705 [repealed, L. 1983, ch. 99, § 30]) or injunctive relief (K.S.A. 60-907), or brought an action for inverse condemnation, their § 1983 claim was improper.

The Board cites *Parratt v. Taylor,* 451 U.S. 527, 537, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), as support. *Parratt* held that the Fourteenth Amendment protects only against deprivations without due process of law, but does not protect against all deprivations of life, liberty, or property by the State. Where states provide an adequate remedy, that remedy itself constitutes the due process required by the Fourteenth Amendment. 451 U.S. at 544.

We followed *Parratt* in *Alvarado v. City of Dodge City,* 238 Kan. 48, 708 P.2d 174 (1985), holding that where an individual is deprived of liberty by an alleged random and unauthorized act of an off-duty police officer working as a security guard for a private employer, the Kansas tort actions for false imprisonment, assault, and defamation provided an adequate post-deprivation remedy, satisfying the requirements of due process. Hence, Alvarado's § 1983 claim was properly dismissed.

Neither *Parratt* nor *Alvarado* are applicable to the present case. Here, plaintiffs are challenging an established state procedure that deprived them of their land without according them proper procedural due process safeguards. Though the plaintiffs had an administrative procedure to challenge the excessive assessment of their land, the special assessments had been approved by the Board and published, effectively creating a lien on the their land. The administrative procedure as it existed did not prevent an unconstitutional taking. K.S.A. 19-2705 merely allowed a hearing at which the property owner could object to an unequal assessment of his land as compared to the assessment of other similar land in the benefit district. After the hearing, the county could proceed to collect the arbitrary assessment. No administrative remedy existing at that time provided a landowner the opportunity to discontinue the project when additional areas were added to the district, or when the cost had exceeded the original estimate and no longer provided a benefit to the district. An arbitrary decision cannot be validated by a procedurally correct review process that produces an equally arbitrary ruling. *Vari-Build, Inc. v. City of Reno*, 596 F. Supp. 673, 679 (D. Nev. 1984). (K.S.A. 1986 Supp. 19-27a06, enacted in 1983, prevents an unconstitutional taking by prohibiting the addition of land to the sewer district and requires a second public hearing when the cost of the project exceeds more than ten percent of the initial estimated cost.)

K.S.A. 60-907 provides injunctive relief to enjoin the illegal levy of any tax, charge, or assessment. Injunctive relief from the outstanding assessments affects only that yearly assessment. Injunctive relief would not preclude the Board from levying future excessive assessments for the same obligation.

"Inverse condemnation" is an action or eminent domain proceeding initiated by an individual having an interest in realty rather than by a government condemnor. Inverse condemnation is available when private property has actually been taken for public use without formal condemnation proceedings and there is no intention or willingness on the part of the taker to bring the action to acquire the property. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 671 P.2d 511 (1983). Such procedure is not available to provide the plaintiffs

with relief since there was no actual taking of the land by the county.

### An Actionable Claim

The Board contends there was not sufficient evidence to support a § 1983 claim. We disagree.

After the improvement district was initially formed, the Board excluded 200 acres from the district, resulting in an increase in assessments to the plaintiffs. Plaintiffs were never given notice of the exclusion of the property or an opportunity to be heard on the matter, as was required at that time by K.S.A. 19-2715e (repealed, L. 1983, ch. 99, § 30).

Prior to formation of the districts, plaintiffs were informed at a public hearing that the costs of the improvements would be $2,000 per acre. After numerous enlargements and changes in design, the costs increased to approximately $3,700 per acre. The Board was neither required by law nor made any effort to inform the landowners of the modification of the districts or the increased costs of the project (now required by K.S.A. 1986 Supp. 19-27a06).

The trial judge also found that the landowners were improperly assessed for improvements to service areas outside the benefit districts. The sewage collection lines were sized to service not only the areas inside the districts created, but also outside the districts. To benefit the county, the sewage treatment facility was constructed an additional mile from the Sub-District No. 5 boundary. The size of the plant location was in excess of the district's needs. There was evidence to support that the Board had in the past an "established policy or custom" in designing and constructing sewage collection and treatment facilities for service of the ultimate watershed, and not just for areas covered within the formed sewer districts. Under these circumstances, it was a violation of due process to assess the entire cost of the project against the landowners.

In *Quality Homes, Inc. v. Village of New Brighton*, 289 Minn. 274, 183 N.W.2d 555 (1971), the city had designed and constructed a trunk sewer to eventually serve property not within the sewer district. In designing and sizing the trunk sewer, the city forecast the use to be made of that trunk sewer by all of the areas eventually to be served by it, but only assessed properties

in the district. The court, in finding the assessment invalid, stated that where the assessment exceeds the amount of special benefits to the improvement district, the assessment is, as to the excess, a taking of private property for public use without just compensation.

Plaintiffs were denied due process under the prior law. They were not provided notice of the modification and the increased cost of the projects; therefore, they did have an actionable § 1983 claim.

Prevailing Parties

The Board contends that the plaintiffs were not prevailing parties because: (1) they did not succeed on any significant issue; (2) they did not have a substantial § 1983 claim; (3) they did not achieve the relief sought; and (4) their § 1983 claim did not arise out of the same operative facts as a nonconstitutional claim upon which they prevailed. The Board contends that since the plaintiffs did not prevail under 42 U.S.C. § 1983, they are not entitled to attorney fees.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides:

"In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Under 42 U.S.C. § 1988, the prevailing party should ordinarily be awarded attorney fees unless there are special circumstances making such an award unjust. A person is a "prevailing party" within the context of 42 U.S.C. § 1988 when he essentially succeeds in obtaining the relief he seeks in his claims on the merits. *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507.

For a party to "prevail," a judicial determination is not necessary. Parties are considered to have prevailed when they vindicate a right through a consent judgment, a settlement, or without formally obtaining relief. *Maher v. Gagne*, 448 U.S. 122, 129, 65 L. Ed. 2d 653, 100 S. Ct. 2570 (1980). In suits alleging § 1983 violations which result in settlements or consent decrees favorable to relief request by the plaintiff, the district court, on a

§ 1988 application for attorney fees, must first determine whether the lawsuit, as a matter of law, involved the vindication of the plaintiff's rights secured by the Constitution or laws of the United States. *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1475 (10th Cir. 1985).

The plaintiffs' purpose in the lawsuits was to obtain relief from the assessments on their land. The relief obtained by the settlement amounts to approximately $1,150 per acre, exclusive of interest, for every property owner within the districts. The settlement agreement benefited not only the plaintiffs, but all property owners within the sewer districts.

The Board argues that the plaintiffs received nothing by way of settlement because the county only gave the landowners "credits" to which they would have been entitled in any event. They contend that the settlement only provided the landowners with a different method to pay the costs and retire the debt.

To support its claim, the Board presented evidence that within twenty years' growth, buy-in and enlargement charges would occur at a rate sufficient to offset the reduced assessment for current landowners and pay off the approximately $4.5 million difference between actual costs and the amount to be paid by the plaintiffs and other landowners. The trial court rejected the testimony of the defendants' expert witness, finding the expert's testimony regarding when and what "buy-ins" would occur was "highly speculative" and "highly conjectural."

The trial judge found that the credits are not and never will be guaranteed. Their existence can only become a reality if there is sufficient or substantial growth and increased demand for sewer facilities in certain areas of the county outside the current sewer districts. If sufficient growth does not occur, no credits will be received. If a landowner retains his land for the full twenty years, he must still pay the full assessment as due or lose his land for taxes. Only near the end of the bonding term would any landowner be relieved of some portion of the last payment or payments of assessments by credits.

We agree that the benefits received by plaintiffs through the settlement agreement are sufficiently substantial to make them prevailing parties under § 1983. The landowners' obligation to pay for the existing sewer collection and treatment facilities will

never exceed $2,550 an acre even if no growth occurs. The Board has given up its right to collect from landowners in the districts for existing sewer improvements of more than $2,550 an acre.

Was the plaintiffs' § 1983 claim substantial and meritorious? A constitutional claim is not substantial if it is wholly insubstantial, obviously frivolous, plainly unsubstantial, or obviously without merit. *Hagans v. Lavine,* 415 U.S. 528, 537, 39 L. Ed. 2d 577, 94 S. Ct. 1372 (1974).

From the outset the plaintiffs have alleged not only violations of rights secured by the Fifth Amendment (a taking of their land arising from imposition of assessments substantially in excess of benefits conferred), but also violations of the Fourteenth Amendment (a violation of their due process rights arising from the manner in which defendants caused the sewer system and resulting assessment to grow to their eventual proportions).

The exaction from the owner of private property of the cost of public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation of private property for public use without compensation. *Norwood v. Baker,* 172 U.S. 269, 279, 43 L. Ed. 443, 19 S. Ct. 187 (1898). Where a special assessment exceeds the amount of special benefits to the property assessed, the assessment is, as to such excess, a taking of private property for public use without just compensation. In addition to protecting property rights and personal rights, where state law does not provide an adequate remedy, § 1983 provides a vehicle for redress for the wrongful deprivation of property by persons acting under color of state law.

Under K.S.A. 19-2704 *et seq.* as it then existed, the Dutoits in their original action raised a substantial, nonfrivolous claim—a "taking" of property sufficient to raise a due process issue—to a constitutionally significant level. Having exhausted their administrative remedies, the Dutoits were not required to pursue all possible state remedies, but could file a § 1983 action to resolve the issues. See *Dutoit v. Board of Johnson County Comm'rs,* 233 Kan. at 1004-05.

The Board argues that the plaintiffs are not entitled to a § 1988 award of attorney fees because their § 1983 claim did not arise from the same operable facts as the state court claims. We agree

that, under *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, the state claim filed by the plaintiffs must involve a common nucleus of operative facts with a substantial federal claim before a § 1988 claim for attorney fees is proper.

Where a prevailing party is successful on a single substantial claim brought in the context of a civil rights suit, success on all claims made is not required. *Reel v. Arkansas Dept. of Correction*, 672 F.2d 693, 697 (8th Cir. 1982); *Busche v. Burkee*, 649 F.2d 509 (7th Cir.), *cert. denied* 454 U.S. 897 (1981); *Oldham v. Ehrlich*, 617 F.2d 163, 168 n.9 (8th Cir. 1980). It is sufficient if a significant issue is determined in the plaintiff's favor and leads to the achievement of some of the benefits sought by bringing suit. *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979), *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978). A person may be a prevailing party on a nonconstitutional claim brought in the same action with a substantial constitutional claim, but in order for attorney fees to be recovered for the nonconstitutional claim, the two claims must arise from the same nucleus of operative facts. *Reel v. Arkansas Dept. of Correction*, 672 F.2d at 697.

In *Gumbhir*, two claims were made in the original action: (1) that there was an unconstitutional delegation of legislative authority by the legislature to a nongovernmental agency and, (2) that the application of the statute violated his rights under the federal Constitution. The two claims asserted by Gumbhir were based on two separate acts. The first, the claim upon which Gumbhir prevailed, was based upon the act of the legislature delegating authority to a nongovernmental agency. The second claim was based on the act of that agency applying the statute. Each of Gumbhir's theories of relief contained different elements. Since Gumbhir was a prevailing party under his state claim, he was denied a § 988 award for attorney fees.

In the present case, plaintiffs' claims of inverse condemnation, arbitrary and unreasonable action, deprivation of due process, and taking property without just compensation all arise out of the assessment against plaintiffs' property. The plaintiffs' claims share a common nucleus of operative facts. The trial court correctly determined there was a § 1983 violation upon which to base a claim for attorney fees under § 1988.

The Board argues that the plaintiffs were not a prevailing party

because their suit was not the substantial factor in the settlement nor were the terms of settlement required by federal law or the Constitution. They also contend that the settlement was reached, not because of the merits of the suit, but because the Board did not want to bear the increasing costs of the litigation.

The plaintiffs must demonstrate that their lawsuits are linked causally to the relief obtained, *i.e.*, the suit must be a "substantial factor or a significant catalyst" in prompting the defendants to act or cease their behavior. Plaintiffs must also demonstrate that the defendants' conduct in response to the lawsuit was required by the Constitution or federal law, *i.e.*, the defendants' actions must be legally required. *Supre v. Ricketts,* 792 F.2d 958, 962 (10th Cir. 1986).

The trial judge found that defendants' settlement was not merely an attempt to avoid additional costs and was in fact settled because of the lawsuit. The settlement required defendants to pay $4.5 million in costs. The Board has posed no other theory as a reason for the settlement, even though avoiding additional costs can always be raised as an argument for settling any case. We agree, under the circumstances, that the lawsuit was a substantial factor in prompting the defendants to lower the assessments of the plaintiffs' properties. We also find that the defendants' conduct in response to the lawsuit was required by the Constitution or federal law, *i.e.*, the defendants' actions were legally required.

### Adequate Circumstances to Deny an Award of Fees

The Board argues that because public improvements which benefited the plaintiffs were requested by plaintiffs and performed under statutory procedure, special circumstances exist and attorney fees are not appropriate.

We disagree. The mere fact that an individual requests some action by a governmental entity does not mean that the individual consents to the government taking actions which exceed its constitutional authority.

### The Amount of the Award

The Board contends that the amount of fees awarded by the trial court was excessive and not reasonable because plaintiffs did not prevail upon the vast majority of their claims, that the

attorney fees were based on speculative matters, and that the attorney fees awarded included costs and expenses which were not reasonably necessary and were unrelated to proof or issues.

In § 1983 actions, various guidelines for attorney fee awards exist. Section 1988 fee awards are authorized for private enforcement of statutes, or in cases of common fund and common benefits awards.

Common fund cases are normally class action type litigation which requires the lawyer to contract for a contingent fee. The clients (the class) agree to compensate their attorneys based on a percentage of the recovery. (For a discussion of attorney fees awarded in common fund cases see *Gigot v. Cities Service Oil Co.,* 241 Kan. 304, 737 P.2d 18 [1987]).

Under § 1983 actions, statutory fee awards pursuant to § 1988 are also contingent. Attorney fees are awarded only to counsel of the prevailing parties. The attorney for the prevailing party is then entitled to a reasonable fee set by the court. The factors to be considered include: (1) the number of hours spent on the case by the various attorneys and the manner in which they were spent; (1) the reasonable hourly rate for each attorney; (3) the extent, if any, to which the quality of the attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled; and (4) the benefit produced by the lawsuit (sometimes referred to as "lodestar").

Attorney fees awarded against governmental units should be calculated based on the actual hours reasonably spent and in the same manner as one would bill his own client. In determining which hours reported were reasonably expended and hence are billable to the adversary, the court should examine the total number of hours reported by each lawyer and question reported time significantly in excess of the norm. Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in § 1983 claims if reasonable in amount. Expenses for long-distance telephone charges, copying costs, and other expenses should be allowed as fees only if the expenses are usually charged separately in the area. Out-of-pocket costs not normally absorbed as part of law firm overhead may be reimbursed. The costs of reasonable expert witness fees and copies of depositions necessary to the litigation of the case

are also allowable. *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983).

Here, prior to determining the amount of the fee awarded, the trial judge carefully reviewed the factors to be considered when awarding attorney fees to prevailing plaintiffs. He observed that this litigation involved highly technical fields of engineering, demographics, and economics. It required significant research because of the complex nature of the litigation. The attorneys were successful in arriving at a settlement that resulted in a net savings to their clients.

In his well-reasoned memorandum decision, the trial judge determined that there were no special circumstances existing that would preclude the award of attorney fees to the prevailing plaintiffs. He then carefully set out the following factors he considered when awarding attorney fees to the plaintiffs: that the plaintiffs achieved only partial success on the claims presented, the excellent end result, the hours and rates submitted by the attorneys, what services were duplicated, the experience of each attorney, and what fees are traditionally received from a fee-paying client. After reviewing the records submitted by the attorneys, the judge made extensive findings and adjusted the fees requested by the plaintiffs, in excess of $850,000, to $585,000.

Where established guidelines for determining the size of the attorney fee to be awarded are followed by the trial judge, appellate review is limited to abuse of discretion. Under the circumstances, the trial judge did not abuse his discretion. The fees and expenses awarded by the district court were reasonable.

### Assessment Against the County

The Board contends that the attorney fees should have been assessed against the separate sewer districts rather than the county. It argues that, because the county commission was acting in its capacity as the governing body of the three sewer districts, the sewer districts are responsible for the costs.

In *Kentucky v. Graham*, 473 U.S. 159, 164, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985), the Supreme Court stated:

"Section 1988 does not in so many words define the parties who must bear these costs. Nonetheless, it is clear that the logical place to look to recovery of fees is to

the losing party—the party legally responsible for relief on the merits. That is the party who must pay the costs of the litigation, [citation omitted] and it is clearly the party who should also bear fee liability under § 1988."

This case is analogous to *Bell v. City of Topeka,* 224 Kan. 147, 577 P.2d 1193 (1978). There, certain property owners brought an action to enjoin the City of Topeka from enforcing certain ordinances levying and assessing part of the cost of improving a street against the real estate within a benefit district. In the first *Bell* case, *Bell v. City of Topeka,* 220 Kan. 405, 553 P. 2d 331 (1976), it was determined that the assessment against the property owners within the proposed benefit district was unjust, unreasonable, and arbitrary and that the manner in which the district had been created was unlawful. In the second appeal (224 Kan. 147), the City contended, among other issues, that the trial court had erred in assessing certain accrued interest against the City, rather than the improvement district. We disagreed, finding that it would be manifestly unjust to assess the interest against the benefit district because the delay was caused by the wrongful, illegal, and unreasonable acts of the City.

It would be against public policy to assess against a benefit district, the prevailing party, damages or expenses arising out of a lawsuit contesting the governing body's action. Since the trial judge found that the county is legally responsible, he must assess the costs resulting from its acts against the county as a whole. The trial judge correctly assessed costs.

Affirmed.