No. 67,064

THE CITY OF WICHITA, KANSAS, A Municipal Corporation, *Appellant/Cross-appellee,* v. B G PRODUCTS, INC., *Appellee/Cross-Appellant.*

(845 P.2d 649)

Opinion filed January 22, 1993.

*Douglas J. Moshier,* senior assistant city attorney, argued the cause, and *Gary E. Rebenstorf,* city attorney, was with him on the brief for appellant/cross-appellee.

*Kurt A. Harper,* of Sherwood & Harper, of Wichita, argued the cause, and *Roger Sherwood,* of the same firm, was with him on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

HERD, J.: This is a condemnation action by the City of Wichita (City) filed against B G Products, Inc. (B G). The action was abandoned after the filing of the court-appointed appraisers' report. Pursuant to K.S.A. 26-507(b), the district court awarded B G $145,802.33, including $123,000 in attorney fees, for the expenses it incurred in defense of the action. The City appeals and B G cross-appeals. We affirm.

The background for this dispute is not complicated. The City, a municipal corporation, possesses the power of eminent domain. B G is a petrochemical plant located on the east bank of the Arkansas River, immediately south of Kellogg Avenue in the downtown area of Wichita.

In 1987, the City identified a portion of B G's land and plant facility as necessary for right-of-way to improve Kellogg Avenue. Initially, the City negotiated with B G to purchase the north 80 feet of B G's property. The City intended to pay B G the cost of acquiring the 80-foot strip of land and redesigning the plant facility to accommodate the remaining smaller site. Based upon estimates of Professional Engineering Consultants (PEC), the City concluded the cost would be $1.5 million.

Upon reconsideration, the City decided to have the property appraised. According to an appraisal by Roger Turner, B G's entire property was worth $1 million. Thus, in early 1988, the City offered B G $1 million to purchase its land and the entire plant facility. B G rejected the offer and reluctantly informed the City it would agree to discuss a partial taking and modification of the plant facilities.

In May 1988, B G, through its Kansas director, O. J. Connell, contacted attorney Phillip Mellor to represent its interests in the negotiations with the City and in any condemnation proceedings which might follow. B G and Mellor entered into a written contract set out in a letter dated May 27, 1988, from Connell to Mellor. The agreement provided for a contingent fee in which Mellor was to receive 10% of the difference between the City's offer of $1 million and the amount of the court-appointed appraisers' award paid into the court. If an appeal was taken from the award, Mellor was to receive one-third of any increase over the court-appointed appraisers' award paid into court either before

trial or after trial. To determine Mellor's fee, expenses in preparation for trial were to be deducted before calculating the amount of the increase in the award. Any interest paid by the City on a deficiency was to be treated as part of the increase in the award. The contingent fee contract made no provision for compensating the attorney in case of abandonment of the action by the condemner.

On January 4, 1989, the City filed its condemnation action, seeking B G's entire facility. Two years later the court-appointed appraisers filed their report with the district court. The appraisers determined the total damages to B G were $3,970,000. The City did not pay the amount of the appraisers' award into the district court within 30 days as required by K.S.A. 26-507(a) and thereby abandoned the condemnation proceedings. Although the City abandoned the condemnation suit, it hired PEC to work with B G to come up with a plan that allowed the City to acquire the north 106 feet of property. Construction costs for this project were estimated at $2,283,000. This estimate did not include a determination of whether the City would obtain title to the property.

B G then requested that the City be ordered to pay B G's costs of defending the condemnation action, in accordance with K.S.A. 26-507(b), which provides in part:

"*Abandonment.* If the plaintiff does not make the payment prescribed in subsection (a) thereof for any of the tracts described in the petition, within thirty (30) days, from the time the appraisers' report is filed, the condemnation is abandoned as to those tracts, and judgment for costs including the appraisers' fees together with judgment in favor of the defendant for his *reasonable expenses incurred in defense of the action,* shall be entered against the plaintiff." (Emphasis added.)

In May 1991, a hearing was held in district court to determine B G's expenses, including the attorney fees, for which the City would be responsible on behalf of B G. Five witnesses testified at the hearing. Mellor testified that because his fee agreement with B G was contingent, he had kept no time records, but from his files and other written materials he determined he had worked on this condemnation action between 410 and 524 hours. Mellor explained his estimated hours were based upon assigning time to each document in his file and, therefore, did not include any

time which did not produce a document, such as telephone calls. He testified the 10% contingent fee is customary in the Wichita area for condemnation cases. Mellor explained that during his career he had been paid on an hourly basis in only three special cases. Ordinarily he would never accept a condemnation case on an hourly rate. Mellor further testified he had worked as a consultant in eminent domain cases for $300 per hour for the Board of County Commissioners of Sedgwick County and the Resolution Trust Corporation. His consultant jobs did not include any trial work.

Mellor also testified the contingent fee contract between B G and himself was unenforceable because the contingency of paying the award into court did not occur. He pointed out, however, the fee contract did prove B G had hired him for this condemnation case and that he had the right to be paid for his work on a quantum meruit basis. Mellor testified he believed 10% of the increase from the City's original offer of $1 million to the appraisers' award of $3,970,000, less B G's other expenses, was a reasonable and normal amount for him to be paid. Thus, he requested that his fee be set at $294,725.77. He further justified his fee request because he had filed an appeal from the appraisers' award and he believed the case was worth between $6 and 7 million on appeal.

This condemnation action involved issues regarding the application of the "value in use" appraisal approach, possible effects of hazardous waste upon such appraisal, the effect of a railroad right-of-way upon the property, and the extent of ownership of the property in relation to the river. The witnesses agreed the issues in this case were more novel and difficult than a typical eminent domain proceeding. Thus, the skill requisite to perform the legal services not only required an attorney with general knowledge of eminent domain proceedings, but an experienced attorney in this area who was capable of recognizing issues which were both subtle and obscure. Witnesses for both parties testified Mellor is one of the established legal experts in the field of eminent domain.

The witnesses also agreed it was hard to estimate B G's benefit from Mellor's work due to the fact B G was back to the starting point. James M. Armstrong, an attorney who has handled con-

demnation cases, testified on behalf of the City. He stated that getting the increase above the original $1 million offer "was a substantial piece of work in terms of the results obtained." William P. Higgins, an attorney who also works in the area of eminent domain, testified for B G. Higgins stated Mellor accomplished what the client wanted; that is, to allow the business to continue on the premises and to get the City to pay for needed factory changes in order to operate on a smaller site.

Armstrong also testified he had compared the present case to one he had worked on in the past. That case settled for between $1,250,000 and $1,500,000 and required approximately 120 hours of work. He stated the market rate for eminent domain cases is $200 per hour. Armstrong further testified he believed the number of hours required for B G's case should not have exceeded 200 hours. Thus, it was Armstrong's opinion that $40,000 was a reasonable fee for the legal services provided to B G by Mellor.

The district court held Mellor spent a minimum of 410 hours representing B G in this action and should be paid at a rate of $300 per hour. Therefore, the City was ordered to pay $123,000 for attorney fees. The City was also ordered to pay $22,802.33 for other expenses, making a total award of $145,802.33. The City appeals, claiming the attorney fees awarded B G, and ultimately Mellor, are too high. B G cross-appeals, claiming the attorney fees awarded by the district court are too low.

I

For its first issue the City argues B G failed to prove it had any obligation to pay attorney fees incurred by B G in defense of this condemnation action. It contends the district court's mixed findings of fact and conclusions of law ¶ 14 is inaccurate. That paragraph states:

"It is stipulated that under the provisions of K.S.A. 26-507(b), B. G. is entitled to reasonable attorney's fees from the City because the City abandoned the eminent domain proceedings by failing to pay the appraisers' award within thirty days from the date that the appraisers' report was filed."

The City claims there was no such stipulation in regard to attorney fees. The City points out that at the close of B G's evidence, it moved to dismiss B G's application for attorney fees because B G had failed to establish it had incurred any such

expense. The district court reserved ruling on the motion. During the City's case in chief, the City's expert witness, Armstrong, testified B G was not obligated to pay Mellor under the contingent fee contract, but he still believed B G would owe Mellor a fee for his services under the theory of quantum meruit. During closing arguments, the City's attorney stated: "Everybody uses the same language here and agrees that what we're looking at then is a reasonable fee" and suggested "the proper approach is the one called quantum meruit."

The City also argues B G failed to carry its burden of proof because B G did not come forward with any evidence that it had already paid Mellor the $294,725.77 that he was requesting.

This issue is without merit. There is substantial evidence to support the district court's statement that the parties stipulated to the fact the City owed B G reasonable attorney fees. Furthermore, K.S.A. 26-507(b) clearly provides for the City to pay B G's reasonable expenses. Such expenses include reasonable attorney fees. Even though the contingent fee contract between B G and Mellor is unenforceable, the parties agree B G owes Mellor the reasonable value of his services in defense of the eminent domain action. See *Madison v. Goodyear Tire & Rubber Co.*, 8 Kan. App. 2d 575, Syl. ¶ 1, 663 P.2d 663 (1983).

## II

Next, the City claims the district court's award is not supported by the evidence. Specifically, the City claims the award of attorney fees is too high. In its cross-appeal, B G argues the award is too low. The City claims the reasonable fee should have been $40,000, 200 hours at $200 per hour. In contrast, B G argues the reasonable fee should have been set at the amount Mellor would have received had the City not abandoned the suit— $294,725.77.

The standard for awarding attorney fees, as well as an appellate court's review of such an award, is well established. In *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, Syl. ¶¶ 9-11, 443 P.2d 681 (1968), we stated:

"The trial court itself is an expert in the area of attorneys' fees and can draw on and apply its own knowledge and expertise in evaluating their worth."

"The reasonable value of attorneys' fees rests within the sound judicial discretion of the trial court and its determination will not be disturbed in the absence of an abuse of discretion."

"Appellate courts, as well as trial courts, are experts concerning the reasonableness of attorneys' fees and in the interests of justice may fix such fees when in disagreement with the views of the trial court."

In support of its claim, the City cites *Allison v. Board of Johnson County Comm'rs*, 241 Kan. 266, 278, 737 P.2d 6 (1987), in which we stated: "Attorney fees awarded against governmental units should be calculated based on the actual hours reasonably spent and in the same manner as one would bill his own client." The City claims this sentence stands for the principle that time records must be kept to present a case for quantum meruit. The City has taken this sentence out of context, and its conclusion is incorrect.

*Allison* involved a district court's award of attorney fees to the plaintiffs under 42 U.S.C. § 1988 (1982). In 42 U.S.C. § 1983 (1982) actions, attorney fees are awarded the prevailing parties pursuant to § 1988. There, the factors to be considered included: (1) the number of hours spent on the case; (2) the reasonable hourly rate for the attorney; (3) the quality of the attorney's work and whether it mandates an increase or decrease in the fee; and (4) the benefit produced by the lawsuit. 241 Kan. at 278. Thus, we made the statement governmental units should be billed for the actual hours spent, the same as an attorney would bill his or her own client. *Allison* is not in conflict with the actions in this case. Only the method of proving the reasonable value of legal services differs.

B G cites condemnation cases from other jurisdictions in which the condemner abandons the case and the trial court awards fees based upon, or equal to, the contingent fee agreement. For example, in *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 202 Cal. Rptr. 389 (1984), the appellate court affirmed the trial court's award of attorney fees in the amount of $656,028.50, based upon a 25% contingency fee.

In *City of Gadsden v. Denson*, 590 So. 2d 313 (Ala. Civ. App. 1991), the defendants in a condemnation suit hired an attorney who was to be paid 40% of any increase over the City's original

offer of $30,750. Ultimately, the assessed condemnation damages were set at $47,000, but the City abandoned the proceedings. The trial court conducted a hearing to determine litigation expenses, including reasonable attorney fees. The trial court concluded $6,500 was a reasonable attorney fee, the amount the attorney would have received if the City had not abandoned the suit. The Alabama Court of Civil Appeals affirmed and stated:

> "Based on our review of the record, it appears that the trial court properly considered the *Peebles [v. Miley*, 439 So. 2d 137 (Ala. 1983),] factors in making its determination. The fact that the award is equal to 40% of the amount assessed by the commissioners in excess of the original offer is of no import in this appeal. It appears from the record that the trial court did not consider the contingent fee arrangement as the most controlling factor— something which it is not allowed to do—*Lanier [v. Moore-Handley, Inc.*, 575 So. 2d 83 (Ala. 1991)]; rather, he gave each factor its 'proper interplay.' *Peebles.*" 590 So. 2d at 315.

Rule 1.5 (1992 Kan. Ct. R. Annot. 254) of the Model Rules of Professional Conduct (MRPC) provides that the following eight factors should be considered in determining the reasonableness of an attorney fee:

> "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> "(3) the fee customarily charged in the locality for similar legal services;
> "(4) the amount involved and the results obtained;
> "(5) the time limitations imposed by the client or by the circumstances;
> "(6) the nature and length of the professional relationship with the client;
> "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> "(8) whether the fee is fixed or contingent."

Applying MRPC 1.5 to the case before us, we find it involves an eminent domain action, a unique area of the law. The issues in the action were more novel and difficult than in a typical condemnation suit. They included the application of the "value in use" appraisal approach, environmental concerns, and the effect of a railroad right-of-way upon the property. Mellor testified he worked between 410 hours and 524 hours representing B G in the action.

At the hearing, each witness testified as to his opinion of the impact of the eight factors listed in MRPC 1.5. They testified it

was likely B G's representative, Connell, who was an attorney, understood that by accepting B G's case Mellor would be precluded from other employment. Furthermore, the witnesses agreed this case would probably be the only time Mellor would represent B G. The witnesses also agreed the customary fee in an eminent domain action was a 10 percent contingent fee, with the exception of one local firm that handles eminent domain cases on an hourly fee basis.

This suit involves a substantial amount of money. The City's original offer was for $1 million, and the appraisers' award set the property's value at $3,970,000. All the witnesses agreed Mellor is an expert in the field of eminent domain and had obtained outstanding results for his client. Even though the City abandoned the eminent domain action, B G was more satisfied with the ultimate result because of Mellor's efforts in that it was able to remain on the property rather than being forced to relocate.

Based on the stipulation of the parties, we hold the proper measure of the worth of Mellor's services is quantum meruit. The trial court found Mellor had spent 410 hours on this case and that his reasonable hourly rate was $300 per hour. We find the district court's ruling adequately supported by substantial competent evidence and, therefore, there is no abuse of discretion. Affirmed.

HOLMES, C.J., not participating.

TERRY L. BULLOCK, district judge, assigned.