(995 P.2d 912)

No. 80,086

JOSEPH A. NOLL AND SHIRLEY J. NOLL, SURVIVING FATHER AND MOTHER OF ANTHONY C. NOLL, DECEASED, and THE ESTATE OF ANTHONY C. NOLL, DECEASED, *Appellees/Cross-Appellants,* v. DEBORAH BURNS, D.O., CYNTHIA TAYLOR, R.N., and MARY McDANIEL, R.N., *Appellants/Cross-Appellees.*

Opinion filed January 21, 2000.

*Reid F. Holbrook* and *Brent G. Wright,* of Holbrook, Heaven & Osborn, P.A., of Kansas City, for appellant/cross-appellee Deborah Burns, D.O.

*Wm. Scott Hesse,* assistant attorney general, for appellants/cross-appellees Cynthia Taylor, R.N., and Mary McDaniel, R.N.

*Daniel J. Strausbaugh,* of Katz & Strausbaugh, L.C., of Kansas City, Missouri, for appellees/cross-appellants.

Before BRAZIL, C.J., JANICE D. RUSSELL, District Judge, assigned, and JOHN E. SANDERS, District Judge, assigned.

BRAZIL, C.J.: Joseph and Shirley Noll and the Estate of Anthony Noll (Plaintiffs) brought a medical malpractice action against Deborah Burns, D.O., Cynthia Taylor, R.N., and Mary McDaniel, R.N. (Defendants), alleging Defendants caused the death of their son Anthony Noll. Defendants appeal from the trial court's pretrial ruling that required them to pay Plaintiffs $22,277.05 in costs. Plaintiffs cross-appeal, claiming the trial court erred in failing to award them an amount of $87,865.41 as was requested in their motion for sanctions.

Finding no reversible error, we affirm.

Anthony Noll sought treatment from Dr. Weiner, an allergist practicing in Lawrence, Kansas, for his allergies and asthma. Dr. Weiner prescribed allergen injections that were to be administered to Anthony at certain intervals. While Anthony was attending Emporia State University, Dr. Weiner forwarded his medication to the university's health clinic where Defendants administered the injections. In 1993, after receiving an injection at the health clinic, Anthony suffered an anaphylactic reaction and subsequently died.

In March 1995, Plaintiffs filed wrongful death and survival actions alleging defendants were negligent in treating Anthony's asthma and in administering the allergin shots. The allegations implied the administration of the injections while Anthony showed apparent symptoms of asthma increased the risk of an anaphylactic reaction.

Plaintiffs alleged the following in their pretrial questionnaire: (1) Defendants failed to recognize and appreciate that Anthony's asthma was unstable; (2) Defendants failed to treat the cause of Anthony's unstable asthma; (3) Dr. Weiner's instructions were not followed by Defendants since the allergin shots were administered while Anthony showed symptoms of asthma and the doses were excessive; (4) Defendants were negligent in treating Anthony after he experienced the anaphylactic reaction.

Defendants asserted the following defenses in their joint pretrial questionnaire: (1) Defendants followed Dr. Weiner's instructions; (2) Defendants' actions were within the standard of care for the treatment of asthma and the administration of allergen injections; (3) Anthony's asthma was treated within the recognized standards of care for nurses and physicians; (4) Anthony's treatment after the anaphylactic reaction was within the recognized standards of care. Defendants also asserted the following defense:

"Defendants submit that anaphylaxis is a known risk associated with allergen injections, yet extremely rare. The causes of anaphylaxis are not sufficiently known so as to predict its occurrence. If the allergist believe [sic] any additional steps or equipment should have been employed for administration of allergens, this information was not provided to the ESU clinic by Dr. Weiner, an expert in the area of allergens and their injection, and/or was not provided in a clear enough form

as to be understood and followed by the lesser trained nurses and doctors at the ESU Student Health Clinic."

In July 1996, the parties filed a pretrial order incorporating the factual contentions and legal theories set forth in the pretrial questionnaires. Subsequently, Plaintiffs filed a motion in limine seeking to prevent Defendants from admitting evidence that Plaintiffs or any other person contributed to cause Anthony's injuries since Defendants had not asserted the defense of comparative negligence. The trial court denied the motion, concluding it would handle any objections to the evidence at trial.

In the course of Defendants' opening statement to the jury, Plaintiffs objected on grounds Defendants were implying Dr. Weiner was at fault and the statement was not relevant to the issues of the case. The trial court overruled the objection. Defense counsel subsequently stated the following:

"[Anthony] goes on what they call a maintenance stage. Now at the maintenance stage, the allergist mixes the vials one vial at a time. They pull sixteen bottles out of the fridge, they fill up the vial and that's what they sent to the clinic. [Dr. Weiner] sent it to the clinic when [Anthony] has not even come back in for his appointment at the end of one year . . . .

"Now [Plaintiffs' counsel] is going to have more to say about parts of this order. Particularly Mr. Logback's going to discuss the dose that is shown on this to be administered. What I would just like to point out it says no more mix can be sent until he has an appointment. Because he had been past a year before Dr. Weiner had ever seen him. What happened? . . . .

. . . .

"And what's amazing, Dr. Weiner gave [Anthony] some instructions back when he first started on the allergin. He gave him an instruction sheet. Dr. Weiner, and this isn't a violation of the standard of care, folks, this is the way it's done. The instruction sheet that he — was sent to [Anthony] was never sent to Dr. Burns or to ESU clinic, his medical records were never sent, there was no plan of asthma sent to the clinic. All that was sent to the clinic was a vial of allergins to be administered."

Plaintiffs' counsel again objected and the trial court sustained the objection. Defense counsel subsequently stated:

"The Nolls then went to see Dr. Weiner [after Anthony's death]. And the evidence will be that Dr. Weiner when he saw them didn't say, hey, my instructions said that, that anaphylaxis is a risk of taking these shots that it can occur, didn't say

that, didn't say, well, you know, under our policy we never saw him back for a ye. r and he was overdue for an appointment and, you know."

Plaintiffs' counsel again objected and the trial court ruled defense counsel was prohibited from pointing to actions of Dr. Weiner which a person of ordinary intelligence might consider to be below a reasonable standard of care.

Following opening statements, Plaintiffs renewed their motion in limine. Defendants argued the following in response: (1) They had no reason to allege or evidence to support an allegation that either Dr. Weiner or Anthony owed a duty of care or were at fault; (2) causation and fault were separate issues in the case; and (3) they should be able to argue other events possibly caused the anaphylactic reaction.

Ultimately, the trial court summarized the situation as follows:

"What we have here is a situation of where the plaintiffs suggest the total fault lies with the three defendants. The defendants in response deny not only their liability but have suggested that there are other causes for the anaphylactic reaction suffered by the decedent that everybody agrees ultimately lead to his death. The defendants have in their pleadings and in the pretrial order . . . have steadfastly maintained that they did not believe that there was any deviation from a standard of care by other persons who dealt with the deceased. But at the same time they believe that there are other explanations or causes for the death which should — they should — are entitled to present to the jury. They do not believe that they have to prove that there was a deviation from the standard of care on the part of these phantom parties in order to be able to present evidence of the possibility that other acts caused the death of Anthony Noll."

The trial court then gave Defendants two options on how to proceed. It stated Defendants could either (1) proceed to trial without presenting evidence of causation, or (2) amend their pleadings, pay the costs incurred by Plaintiffs in preparing for trial, and schedule a new trial. Defendants chose to amend their pleadings, pay the costs, and schedule a new trial. Defendants and Plaintiffs objected to the trial court's ruling.

Plaintiffs subsequently filed a motion for sanctions and submitted an itemized claim for attorney fees and expenses in the amount of $87,865.41. Based on its prior ruling, the trial court issued an order awarding Plaintiffs $22,277.05 for attorney fees and expenses incurred in preparing for trial. In its order, the trial court provided

a breakdown of the calculations it used to arrive at the sum. Following a hearing, the trial court denied the motion for sanctions and indicated in its journal entry that Defendants had not proceeded improperly or done anything wrong to warrant sanctions.

However, in the final pretrial order of the second trial, Defendants indicated they were not asserting negligence of any other person. The jury found Dr. Burns 50% at fault, Taylor 30% at fault, and McDaniel 20% at fault, and awarded Plaintiffs $129,500 in damages.

## The Appeal

Defendants argue the trial court did not have the statutory authority to award costs in the amount of $22,277.05. They argue K.S.A. 60-2007 is the only statute which allowed an award of those "costs" imposed by the trial court. Defendants do not argue the trial court was specifically without authority to award attorney fees. Rather, their argument is that the trial court was without authority to award any of the costs and fees assessed against them.

The trial court indicated in its ruling that over half of the award was for attorney fees. However, it never indicated what statute it was relying on as authority for its action. At trial, the court initially stated it would not require Defendants to pay attorney fees. Following objections and arguments of trial counsel, the trial court asked Plaintiffs to prepare an itemized claim for costs, expenses, and attorney fees, and stated it would hold a hearing on the claim.

At the hearing, the trial court made clear it did not intend to impose sanctions for any wrongdoing by Defendants. However, it concluded Defendants' attempt to assert a comparative negligence defense did not comply with the pretrial order and stated it would award an amount for expenses and for time incurred by Plaintiffs counsel in preparing for trial.

K.S.A. 60-216(b), the statute in effect at the time of trial, provided:

"If a party or party's attorney fails to obey a pretrial order . . . the judge, upon motion or the judge's own initiative and after opportunity to be heard, may make such orders with regard thereto as are just . . . . In lieu of or in addition to any other sanction, the judge shall require the party or the party's attorney, or both,

to pay the reasonable expenses incurred because of any noncompliance with this section, including attorney fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust."

Defendants' attempt to assert a comparative negligence defense at trial was in violation of the pretrial order and K.S.A. 60-216. The trial court specifically found Defendants attempted to proceed in a manner contrary to the pretrial order. This ruling was memorialized in the trial court's journal entry denying sanctions in which the trial court reviewed its prior ruling, stating: "The Court determined that the Defendants could not present evidence of, or refer to, other possible causes without alleging fault based upon *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, [681 P.2d 1038] (1984)."

In their response to Plaintiffs' cross-appeal, Defendants argue K.S.A. 60-216 is not applicable since Plaintiffs did not contend the statute controlled when seeking attorney fees. They also argue sanctions were not proper because the trial court stated in its ruling denying sanctions that the parties had done nothing wrong and had not proceeded improperly.

As indicated, the trial court concluded Defendants had attempted to assert a defense not raised in their pretrial order. The trial court's statements that Defendants had not proceeded improperly nor done anything wrong refer to its finding Defendants had not acted in bad faith. Under K.S.A. 60-216(b), the trial court was permitted to enter any order it deemed to be just upon finding a party was in violation of the pretrial order. It was not required to make a finding of bad faith before assessing reasonable expenses and attorney fees against Defendants. The award of costs and attorney fees was authorized by the statute, and it was within the trial court's discretion to determine the value awarded. See *City of Wichita v. B G Products, Inc.*, 252 Kan. 367, Syl. ¶ 3, 845 P.2d 649 (1993).

## The Cross Appeal

In their cross-appeal, Plaintiffs maintain that Defendants acted in bad faith in an attempt to mislead the jury and that they incurred

significant expenses as a result of the improper conduct. Plaintiffs allege that because Defendants violated the pretrial order and acted in bad faith, they are entitled to full compensation under K.S.A. 60-216 and K.S.A. 60-2007. They ask this court to find the trial court abused its discretion in failing to award them $87,865.41 as requested in their motion for sanctions.

As previously stated, K.S.A. 60-216(b) was the statute in effect at the time of trial. The language contained in K.S.A. 1998 Supp. 60-216(f) is identical to that of K.S.A. 60-216(b), stating that the trial court has the discretion to "make such orders . . . as are just," upon a party's failure to obey a pretrial order. Under K.S.A. 60-2007(b), in effect at the time that costs were assessed, attorney fees and expenses may be assessed if (1) a claim asserted by a party is without a reasonable basis in fact, and (2) the claim was not asserted in good faith. *Subway Restaurants, Inc. v. Kessler*, 266 Kan. 433, 443, 970 P.2d 526 (1998).

At the hearing on Plaintiffs' motion in limine, Defendants thoroughly explained their position and their intent to present evidence relating to causation. The trial court stated it was not clear whether Defendants should be precluded from raising the possibility of other causes of death and concluded it would address Plaintiffs' concerns as needed at trial. Based on the trial court's ruling, it was reasonable for Defendants to believe they could properly pursue their intended line of defense at trial.

Nothing in the record supports Plaintiffs' contention that Defendants asserted their theory of defense in bad faith. The trial court thoroughly explained the method used for assessing costs, and its calculations are supported by the record. The trial court did not abuse its discretion in denying Plaintiffs' motion for sanctions or in assessing costs.

Affirmed.