(16 P.3d 311)
No. 84,354

JAMES A. GRAGG, *Appellant*, v. DAVID R. KCKUNE, *et al.*, *Appellees.*

Opinion filed December 8, 2000.

*Ronald Schneider*, of Lawrence, for appellant.

*Kenneth R. Smith*, special assistant attorney general, for appellees.

Before GREEN, P.J., PIERRON, J., and RAWLEY JUDD DENT II, District Judge, assigned.

GREEN, J.: James A. Gragg appeals from the trial court's order dismissing his claim under 42 U.S.C. § 1983 (Supp. 1998). On appeal, Gragg argues that his § 1983 claim (1) was not barred by an adequate state remedy and (2) was brought within the statute of limitations. We agree and reverse and remand for trial.

Gragg was incarcerated at the Lansing Correctional Facility in Leavenworth County, Kansas, by the Kansas Department of Corrections (KDOC) for aggravated incest, which was committed before July 1, 1993. Under applicable sentencing laws, rules, and regulations in effect when Gragg was convicted, his conditional release date was April 28, 1996. During Gragg's incarceration, David R. McKune, John Cooling, and William L. Cummings were employed by the KDOC and were allegedly responsible for the determination of Gragg's date of release from incarceration.

After Gragg's conviction, K.A.R. 44-6-124(g)(6) was amended to alter the calculation of good time credits for persons convicted of

crimes committed before July 1, 1993. This administrative regulation resulted in the taking of good time credits from Gragg. Gragg notified McKune, Cooling, Cummings, and the KDOC (collectively referred to as the defendants) that his release date was still to be April 28, 1996.

On November 20, 1995, Gragg moved for a writ of habeas corpus seeking recalculation of his release date based on his good time credits. Gragg asserted that as applied to him, K.A.R. 44-6-124(g)(6) was an ex post facto law. The trial court agreed, holding that as applied to Gragg, K.A.R. 44-6-124(g) was an ex post facto law and ordered the Secretary of Corrections to recalculate Gragg's release date. In a separate case, our Kansas Supreme Court also determined that K.A.R. 44-6-124(g), as applied to inmates with convictions for crimes committed before its enactment, was an ex post facto violation. *Stansbury v. Hannigan,* 265 Kan. 404, 960 P.2d 227 *cert. denied* 525 U.S. 1060 (1998).

Despite the trial court's order on Gragg's habeas corpus petition, Gragg continued to be incarcerated and no recalculation of his release date was completed. On July 23, 1996, Gragg filed a motion to require the defendants to explain why they should not be held in contempt for failing to recalculate his release date. Gragg was released, without explanation, on July 27, 1996. Gragg was incarcerated 90 days beyond his scheduled release date of April 28, 1996, and 47 days beyond the date the trial court ordered a recalculation of his release date.

On April 28, 1998, Gragg filed a petition seeking damages under § 1983 and for negligence attributable to the defendants. The trial court granted a motion to dismiss filed by the defendants. The trial court determined that Gragg's cause of action under § 1983 was barred because an adequate state remedy for false imprisonment was available to Gragg. The trial court further ruled that a false imprisonment claim should have been brought within the 1-year statute of limitations. In addition, the trial court dismissed the negligence claim because it was an attempt to circumvent the 1-year statute of limitations for false imprisonment.

Gragg's first argument on appeal is that his § 1983 claim is not barred even if an adequate state remedy may have been available.

The issue of whether Gragg's § 1983 claim is barred by an adequate state remedy is a question of law subject to unlimited review by this court. See *Swinehart v. City of Ottawa*, 24 Kan. App. 2d 272, 275, 943 P.2d 942 (1997).

42 U.S.C. § 1983 (Supp. 1998) provides, in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983 (Supp. 1998) is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

The United States Supreme Court first addressed whether a § 1983 claim is barred by an adequate state law remedy in *Parratt v. Taylor*, 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *overruled in part on other grounds Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986). In *Parratt*, an inmate ordered hobby materials that were lost by prison employees. The inmate brought an action under § 1983 against prison officials for the deprivation of his property without due process of law. The *Parratt* Court held that since the deprivation was the result of a random and unauthorized act, there was no way for the state to protect against these violations in advance and the available state remedy was adequate under these specific facts. 451 U.S. at 541-44.

The *Parratt* rule was followed by the Kansas Supreme Court in *Alvarado v. City of Dodge City*, 238 Kan. 48, 708 P.2d 174 (1985). In *Alvarado*, the court addressed a § 1983 claim against an off-duty police officer for his actions as a store security guard in apprehending the plaintiff as a suspected shoplifter. The *Alvarado* court recognized that where a deprivation of life, liberty, or property is "caused by a random and unauthorized state act for which prior process is impracticable or impossible," a postdeprivation remedy is the avenue for redress and a § 1983 claim does not lie.

238 Kan. at 54. *Alvarado* held that under the facts of that case, "the Kansas tort actions for false imprisonment, battery, and defamation provide an adequate postdeprivation remedy sufficient to satisfy the requirements of due process under the Fourteenth Amendment." 238 Kan. at 55.

*Parratt* and *Alvarado* were distinguished from the facts presented in *Allison v. Board of Johnson County Comm'rs*, 241 Kan. 266, 271, 737 P.2d 6 (1987). *Allison* involved an unconstitutional taking of property by a special assessment to pay for wastewater treatment. The *Allison* court held that neither *Parratt* nor *Alvarado* was applicable in that case because the unconstitutional taking of the plaintiffs' property resulted from an administrative procedure that did not contain proper postdeprivation procedural due process safeguards. 241 Kan. at 271. *Allison* held that the plaintiffs' § 1983 claim was proper and the adequacy of state remedies was irrelevant because the arbitrary decision to take the plaintiffs' property could not be "validated by a procedurally correct review process that produces an equally arbitrary ruling." 241 Kan. at 270-71.

In *Zinermon v. Burch*, 494 U.S. 113, 124-25, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990), the United States Supreme Court clarified when it is relevant to inquire into the adequacy of state law remedies. The *Zinermon* Court noted:

"[O]verlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983. A plaintiff, for example, may bring a § 1983 action for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes, and despite the fact that there are common-law remedies for trespass and conversion. . . .

"This general rule applies in a straightforward way to two of the three kinds of § 1983 claims that may be brought against the State under the Due Process Clause of the Fourteenth Amendment. First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, *e.g.*, freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.' *Daniels v. Williams*, 474 U.S. at 331. As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. [Citations omitted.] A plaintiff, under *Monroe v. Pape*, may invoke § 1983 regardless of any

state-tort remedy that might be available to compensate him for the deprivation of these rights.

"The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* [Citations omitted.] The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; is it not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." 494 U.S. at 124-26.

Here, Gragg claims that his confinement violated his Fourth Amendment right to be free from unlawful seizure and his Eighth Amendment right against cruel and unusual punishment. Accordingly, Gragg's § 1983 claim falls within the first category of § 1983 claims, as outlined in *Zinermon,* based on violations of specific protections defined in the Bill of Rights. Gragg's complaint also includes a substantive due process claim in that he alleges that his imprisonment was the result of arbitrary, wrongful actions by the defendants. See *Daniels,* 474 U.S. at 331; see *Romero v. Fay,* 45 F.3d 1472, 1480 (10th Cir. 1995) ("[A] plaintiff states a claim for false imprisonment in violation of § 1983 by specifically alleging facts that show a government official acted with deliberate or reckless intent to falsely imprison the plaintiff."). Because Gragg's § 1983 claim encompasses both the first and second categories of § 1983 claims, it is irrelevant whether any state tort remedies may have been available to compensate him for the alleged deprivation of his rights. As a result, the trial court erred in dismissing Gragg's § 1983 claim on that basis.

The next issue is whether Gragg's § 1983 claim is barred by the statute of limitations. When Congress created the cause of action codified in 42 U.S.C. § 1983 (1988), it did not provide a statute of limitations. *Miller v. City of Overland Park,* 231 Kan. 557, 559, 646 P.2d 1114 (1982). However, to avoid confusion, each state has a single statute of limitations for § 1983 claims. The appropriate

statute is the residual personal injury statute of limitations. *Owens v. Okure*, 488 U.S. 235, 249-50, 102 L. Ed. 2d 594, 109 S. Ct. 573 (1989). In Kansas, the residual personal injury statute of limitations is found at K.S.A. 1999 Supp. 60-513(a)(4), which provides a 2-year statute of limitations. As a result, the appropriate statute of limitations for § 1983 suits in Kansas is 2 years. See McAllister and Robinson, *The Potential Civil Liability of Law Enforcement Officers and Agencies*, 67 J.K.B.A. 14, 29 (Sept. 1998). Because Gragg brought his § 1983 claim within 2 years after the cause of action arose, his suit is not barred by the statute of limitations.

Reversed and remanded for a trial on Gragg's § 1983 claim.