Royce E. DAWSON, M.D.; Olney M. Patrick, M.D.; John S. Llewellyn, M.D.; Danny M. Clark, M.D.; Frank M. Gaines, Jr., M.D.; Cornelia Serpell; Charles L. Conley, D.O.; and Walter R. Brewer, M.D., as members of the Kentucky Board of Medical Licensure, and the Kentucky Board of Medical Licensure Appellants,

v.

Georges BIRENBAUM, M.D. Appellee.

No. 96–SC–1115–DG.

Supreme Court of Kentucky.

April 16, 1998.

C. Lloyd Vest, II, Louisville, for Appellants.

Kent Masterson Brown, Christopher J. Shaughnessy, Danville, for Appellee.

LAMBERT, Justice.

The issue in this case is whether a party who has alleged both federal constitutional claims and state statutory claims in state court, and prevailed on the state claims with the federal claims having been left unresolved, may recover attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (§ 1988). For the reasons set forth below, we hold that such a party is a "prevailing party" who is eligible for attorney's fees under § 1988; providing entitlement is otherwise demonstrated.

This case arose as a result of actions taken by the Kentucky Board of Medical Licensure (Board), against appellee Georges Birenbaum, M.D. The Board is charged with the duty to "regulate, control and otherwise discipline the licensees who practice medicine and osteopathy within the Commonwealth of Kentucky." KRS 311.555. The procedural framework the Board must follow for investigating and disciplining licensed medical doctors is established in KRS 311.591. Under the statute, the president of the board divides the members of the board into two panels. The inquiry panel is charged with investigating the grievances which are filed with the Board. Under section three (3) of the KRS 311.591, when an inquiry panel investigation is concluded, it is authorized to take only one of three actions: (1) it may find that the grievance is without merit and that further action by the board is not necessary; (2) it may find the physician's misconduct insufficient to warrant a complaint, and thus may issue an admonishment; or, (3) it may issue a complaint against the physician. If a complaint is issued by the inquiry panel, then the hearing panel takes over, and ultimately hears the case against the licensee.

Appellee is an ophthalmologist licensed by the board, practicing in Fayette County. In November of 1990 two grievances were filed against appellee with the board, and in March, 1991 another grievance was filed against him. Pursuant to KRS 311.591, the grievances were assigned to an inquiry panel, and that panel investigated the grievances. The minutes of the August 15, 1991 meeting of the inquiry panel reveal the action taken:

> ...ACTION: Upon discussion, a motion was made by Dr. Gaines that it appeared no violation of the Medical Practice Act occurred in this case and the investigation should be closed. Dr. Gaines further recommended that ten additional patient records should be obtained for further review by a Board consultant. Seconded by Ms. Serpell, the motion carried.

In addition, appellee was notified that his license was placed on "monitor status" at that meeting by a letter dated January 9, 1992, from Lee Weese a "probation officer" with the Board. That letter stated:

> The Kentucky Board of Medical Licensure Inquiry Panel A, at its meeting on August 15, 1991, reviewed an investigation regarding the care and treatment you provided to an individual patient.
>
> After long and thoughtful review, it was the consensus of the Panel that your license to practice medicine in the Commonwealth of Kentucky be placed in a monitor status.

Thus, contrary to KRS 311.591(3) the inquiry panel did not issue a complaint against appellee, admonish appellee for any misconduct, or decide that no further action was necessary. Rather, the inquiry panel placed appellee's medical license on "monitor status" and subpoenaed additional patient records from his office for review. Prior to such action, appellee was not afforded a hearing before the Board regarding the status of his license, and he was not given notice of the Board's action placing his license on "monitor status" until January 1992, well after the Board had taken the August 1991 action. On February 20, 1992, the inquiry panel again discussed the status of appellee's license, and denied appellee's request to be removed from "monitor status."[1]

---

[1]. The February 20, 1992 minutes of the Inquiry Panel meeting state:

ACTION: Following a discussion, a motion was made by Dr. Clark that Dr. Birenbaum's request to be removed from monitor status be denied ... seconded by Ms. Serpell, the motion carried.

Appellee challenged the board's actions by seeking a declaration of rights and injunctive relief in the Jefferson Circuit Court. In his complaint, appellee alleged that the board's actions violated statutory procedures set out in KRS 311.530 to 311.620, specifically KRS 311.591 and KRS 311.605. He also asserted claims pursuant to 42 U.S.C. § 1983 for vindication of his rights under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution; and he asserted that he should be awarded attorney's fees pursuant to 42 U.S.C. § 1988.

The circuit court granted summary judgment for appellee on his state statutory claims. The circuit court did not address appellee's federal constitutional claims, but focused on the propriety of the Board's actions in light of controlling state statutes. The court held that the Board, in placing appellee's medical license on "monitor status," deviated from the statutory procedure set out in KRS 311.591. The court concluded that "there is no authorization in the statute for a 'monitor' status and that the Board must either [follow the procedure of] KRS 311.591(3), or, cease and desist its periodic review of Plaintiff's files." The court was also highly critical of the Board's actions taken at the August 1991 meeting:

... Assuming the additional inquiry commenced in August, 1991, how long must the Plaintiff expect to be kept under the cloud of investigation? Is this truly an active ongoing investigation by the Board of some existing misconduct as defined by KRS 311.595, or is it some kind of quasi disciplinary action called "monitor status ."?

The Court from the undisputed facts, can only infer that this is some sort of quasi disciplinary action taken without compliance with the literal intent of the statute.

Appellee moved for attorney fees pursuant to 42 U.S.C. § 1988. The circuit court denied attorney's fees based on KRS 311.603, a statute which confers immunity on the board for actions taken within the scope of its authority. The circuit court also noted that the statutory provisions regulating the board's powers and functions did not provide

for attorney's fees. Additionally, the court pointed out that its previous order was based solely on Kentucky statutory law, and that no determination regarding appellee's constitutional claim had been made.

The Court of Appeals reversed the circuit court's denial of fees, and remanded for a determination of the amount of fees. The Court of Appeals also held that the board was not immune to an award of attorney fees under § 1988, because under the Supremacy Clause, § 1988 pre-empted the state's statutory grant of immunity to the board. *See also, Hutto v. Finney,* 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522 (1978), as follows:

Congress has plenary power to set aside the States' immunity from retroactive relief in order to enforce the Fourteenth Amendment. When it passed the Act, Congress undoubtedly intended to exercise that power and to authorize fee awards payable by the States when their officials are sued in their official capacities. The Act itself could not be broader. It applies to "any" action brought to enforce certain civil rights laws. It contains no hint of an exception for States defending injunction actions; indeed, the Act primarily applies to laws passed specifically to restrain state actions.

42 U.S.C.1988 provides in pertinent part:

§ 1988. Proceedings in vindication of civil rights

(b) Attorney's fees

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A.2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A.2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be

held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

It is clear that claims for attorney's fees under this act may be brought in state courts. *Maine v. Thiboutot,* 448 U.S. 1, 10–11, 100 S.Ct. 2502, 2507–08, 65 L.Ed.2d 555, 563 (1980). It is also clear that appellee's complaint was brought in part pursuant to § 1983; thus his claim for § 1988 attorney's fees was properly before the circuit court. However, inasmuch as the circuit court did not reach appellee's federal claims, we must decide whether appellee may be awarded attorney's fees after prevailing only on his state law claim.

■ It is well settled that where a party pleads both statutory and constitutional claims, the court deciding those claims should limit itself to considering the statutory claims if in so doing the court may avoid deciding complex constitutional issues. *Preston v. Clements,* Ky., 313 Ky. 479, 232 S.W.2d 85, 88 (1950) ("The prevailing rule seems to be that the courts will avoid the question of constitutionality unless necessary to a proper determination of the merits of the cause under consideration."). In an apparent effort to follow this doctrine without also defeating attorney's fees statutes, a number of state courts have awarded fees where both state

and federal constitutional claims were pleaded, but where only the state claim was resolved. To decide whether § 1988 fees may be awarded, many state courts have borrowed the test federal courts use to determine whether they have pendent jurisdiction of state law claims. *See Barnes v. Childs,* D.C. Miss., 63 F.R.D. 628 (1974). Under the prevailing test, § 1988 fees may be awarded to a party who prevails on a state law claim pleaded in conjunction with a "substantial" federal constitutional claim if the constitutional and the state law claims arise out of a "common nucleus of operative fact." This test for pendent jurisdiction was articulated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) and *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), and its use in the present context was contemplated by Congress as indicated by the legislative history of § 1988.[2] Although the application of this test to this particular issue was discussed by Congress, utilized by the United States Supreme Court in *Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653, 663 (1980), and used by other federal courts, the federal judiciary is not alone in its use of the test in this fashion. Numerous state courts[3] have analyzed this

2. House Report No. 94–1558, 94th Cong., 2d Sess. 4 n. 7 (1976), reprinted in Staff of Senate Comm. on the Judiciary, 94th Cong., 2d Sess., Civil Rights Attorney's Fees Awards Act of 1976 Source Book 212 (Comm.Print 1976), states:

> To the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines,* 486 F.2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine, supra; United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of

a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra* at 725, 86 S.Ct. at 1138.

3. Decisions in which state courts have employed the test include: *Davis v. Everett,* 443 So.2d 1232 (Ala., 1983); *Slawik v. State,* 480 A.2d 636 (Del., 1984); *Allison v. Board of County Commissioners of Johnson County,* 241 Kan. 266, 737 P.2d 6 (1987); *County Executive of Prince George's County v. Doe,* 300 Md. 445, 479 A.2d 352 (1984); *Crane v. Commissioner of Public Welfare,* 400 Mass. 46, 507 N.E.2d 751 (1987); *L.K. v. Gregg,* 425 N.W.2d 813 (Minn., 1988); *Johnson v. Blum,* 58 N.Y.2d 454, 461 N.Y.S.2d 782, 448 N.E.2d 449 (1983) (test was enumerated by Court in a footnote, and case was remanded to lower court for determination of fees); *McNeill v. Harnett County,* 97 N.C.App. 41, 387 S.E.2d 206 (1990), *rev'd on other grounds* 327 N.C. 552, 398 S.E.2d 475 (1990); *Doe v. Cuddy,* 21 Ohio App.3d 270, 487 N.E.2d 914 (1985); *International Association of Machinists v. Affleck,* 504 A.2d 468 (R.I., 1986); *Prince v. Tooele County Housing Authority,* 834 P.2d 602 (Utah Ct.App., 1992) (test used to award party who prevailed on a federal, non-civil rights claim attorney's fees under § 1988).

issue by using the pendent jurisdiction test, and it is a proper guide for our analysis of the issue. The test has been used by state courts, because as one state court commented, "[t]o conclude otherwise would both contravene the congressional goal of encouraging vindication of constitutional rights and undermine the judicial policy of avoiding unnecessary decision of important constitutional issues." *International Association of Machinists v. Affleck*, 504 A.2d 468 (R.I.1986).

In *Davis v. Everett*, 443 So.2d 1232 (Ala., 1983), the Court was presented with the same question we have here. The plaintiff in *Davis* prevailed on her state constitution equal protection claim in the trial court, but the Supreme Court noted, "the trial court neither specifically granted nor denied relief under her federal constitutional or § 1983 claims." *Id.*, at 1236. Nevertheless, the Court held the plaintiff to be a prevailing party under § 1988 because she "alleged a substantial federal claim, which was not dismissed, and ultimately prevailed on her state constitutional claim. The *Gibbs* test is satisfied because both claims arose from a common nucleus of operative facts." *Id.*, at 1236. The court commented on the extent of discretion of a trial court with respect to such fees:

> The trial court's discretion under § 1988 is limited, however: "[The prevailing party] should ordinarily recover an attorney's fee unless special circumstances render such an award unjust." Sen. Rep. No. 1101, 94th Cong., 2d Sess. 1, reprinted in [1976] U.S.Code Cong. & Adm. News 5908, 5912 (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1266 (1968)).

*Id.*, at 1236.

The Supreme Judicial Court of Massachusetts in *Crane v. Commissioner of Public Welfare*, 400 Mass. 46, 507 N.E.2d 751, 753 (1987), adopted this test, and pointedly stated in regard to awarding attorney's fees to plaintiffs who had only prevailed on their state claim, "[t]he plaintiffs should not be penalized by this court's decision to base its holding on State law rather than on § 1983." Similarly, appellee herein should not be penalized because the circuit court did not find

it necessary to resolve his federal constitutional claims, provided, however, that he establish the probability that he would have succeeded on the merits. In *Crane*, this requirement was stated as follows:

> But, we could as well have based our holding on § 1983. It is not unlikely that we would have done so, . . . .

■■■ The decisive question to be resolved is whether appellee's constitutional claim was substantial, and implied in this is a showing of probability of success on the merits. It is not enough to merely present a good argument or provoke thoughtful consideration. On motion for attorneys' fees, the trial court should analyze the case and make a summary determination of whether there was a likelihood of success.

Under the prevailing standard, appellee's federal claim cannot be held insubstantial as a matter of law. As the Court of Appeals noted, the term "substantial" was defined in terms of what is "insubstantial" in *Hagans v. Lavine, supra*. The Court in *Hagans* quoted from *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 858–59, 35 L.Ed.2d 36 (1973), a case which summarized the ways "insubstantiality" had been characterized by the Court in previous cases. "Insubstantiality" had been equated with concepts such as "essentially fictitious," "wholly insubstantial," "obviously frivolous," and "obviously without merit." (citations omitted) "Insubstantiality" had been further defined as such: "[a] claim is insubstantial only if 'its unsoundness so clearly results form the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" (citations omitted)

Previous U.S. Supreme Court decisions do not "foreclose the subject" of whether the board's departure from the statutory procedures governing investigating and disciplining licensed medical doctors was a due process violation. Appellee cites *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), as a limitation on the Supreme Court holdings in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984),

cases which appellant relies upon. There is at least an "inference" that the board violated appellee's due process rights. Appellee's claim is neither "obviously frivolous" nor "wholly insubstantial." It is clear that appellee did not receive notice or a hearing regarding the inquiry panel's action placing his license on the unauthorized "monitor status." Placing appellee's medical license on "monitor status" was characterized by the circuit court as a "quasi disciplinary" action, and before such disciplinary action could be taken, it would appear that appellee should have been granted the procedural due process protections of timely notice and an opportunity to be heard. *See Oliver v. Kentucky Board of Medical Licensure,* Ky.App., 898 S.W.2d 531 (1995) (Where physician was given "timely notice" and an "opportunity to present his case" before the Board imposed a restriction on his license to practice, his procedural due process rights were not violated.); *Kirk v. Jefferson County Medical Society,* Ky.App., 577 S.W.2d 419 (1978).

We recognize that judges of the federal and state judiciary have counseled against excessively expanding the allowance of § 1988 attorney's fees. Justice Powell commented in his dissent in *Maine v. Thiboutot,* 448 U.S. at 24, 100 S.Ct. at 2515, that "ingenious pleaders may find ways to recover attorney's fees in almost any suit against a state defendant." (footnote omitted.) Justice Blackmun similarly noted that a simple "incantation of § 1983" could make attorney's fees available in any case. *Smith v. Robinson,* 468 U.S. 992, 1003, 104 S.Ct. 3457, 3463–64, 82 L.Ed.2d 746 (1984). The Supreme Court of South Carolina, in *Spencer v. South Carolina Tax Commission,* 281 S.C. 492, 316 S.E.2d 386 (1984), *aff'd by an equally divided court,* 471 U.S. 82, 105 S.Ct. 1859, 85 L.Ed.2d 62 (1985), was not persuaded by the "incantation" of sections 1983 and 1988 when it stated, "[i]t may reasonably be inferred that the sole reason for alleging § 1983 was to justify the allowance of counsel fees. We do not believe this was contemplated by Congress when it enacted §§ 1983 and 1988." (citation omitted.)

■  While it is true that the potential for abuse may exist, we believe that strict adherence to the requirements outlined in this opinion will prevent a party from obtaining an unjustified award of attorney's fees if the underlying constitutional claim is insubstantial and without probable success on the merits. Moreover, the foregoing should be considered along with the doctrine that a prevailing party should ordinarily be awarded § 1988 attorney's fees unless there are special circumstances making such an award unjust. *Allison v. Board of County Commissioners of Johnson County,* 241 Kan. 266, 737 P.2d 6, 13 (1987); *Davis v. Everett,* 443 So.2d 1232, 1236 (Ala., 1983); *Johnson v. Blum,* 58 N.Y.2d 454, 461 N.Y.S.2d 782, 784, 448 N.E.2d 449, 451 (1983).

We have duly considered the United States Supreme Court decision in *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), and our decisions in *Revenue Cabinet v. Gossum,* Ky., 887 S.W.2d 329 (1994), and *St. Ledger v. Commonwealth, Revenue Cabinet,* Ky., 942 S.W.2d 893 (1997). While our cases contain broad language, their holdings are clearly limited to tax cases. *St. Ledger* summarized the state of the law as follows:

> Appellants had an adequate remedy under Kentucky law for their objections to the tax levied upon them: (1) a declaratory relief action in circuit court where all constitutional challenges to the two ad valorem taxes could be litigated fully, or (2) the filing of an application for a refund from the State. The National Private Trucking Council decision confirms this Court's holding in Gossum, supra, that § 1988 claims challenging the validity of state taxes in courts are barred when an adequate state remedy is available. Id. As in Gossum, appellants in the case sub judice had an adequate remedy for their claims, precluding a § 1988 award of attorney's fees.

*Id.* at 902.

For the foregoing reasons, we affirm the Court of Appeals and remand this cause to the trial court to hold a hearing for determination of whether appellee should recover

attorneys' fees and if so, in what sum, and for further proceedings consistent herewith.

All concur.