**Carol Dean WALTERS,
Appellant/Cross–
Appellee,**

**v.**

**Tebbs MOORE, Individually and as City Attorney of the City of Harrodsburg; Ollie Joseph Hood, Lonnie Campbell and Jack Springate, Individually and as Commissioners of the City of Harrodsburg; Lorene Hembree, Individu-**

ally and as City Clerk of the City of Harrodsburg; Ernest R. Kelty, Jr., Individually and as Chief of Police of the City of Harrodsburg; and Ed Music, Individually and as Chief Administrative Officer of the City of Harrodsburg, Appellees/Cross–Appellants.

Nos. 2002–CA–002128–MR, 2002–CA–002256–MR.

Court of Appeals of Kentucky.

Oct. 24, 2003.

As Modified Nov. 7, 2003.

Kent Masterson Brown, Christopher J. Shaughnessy, Lexington, KY, for appellant/cross-appellee.

A. Stuart Bennett, Mary E. Naumann, Mary E. Naumann, Lexington, KY, for appellees/cross-Appellants.

Before EMBERTON, Chief Judge; JOHNSON and KNOPF, Judges.

## OPINION

JOHNSON, Judge.

Carol Dean Walters, former Mayor of the City of Harrodsburg, has appealed from an order entered by the Mercer Circuit Court on September 23, 2002, which awarded her attorney's fees pursuant to 42 U.S.C. § 1988 in the amount of $19,500.00. The appellees, Tebbs Moore, Ollie Joseph Hood, Lonnie Campbell, Jack Springate, Lorene Hembree, Ernest Kelty, Jr., and Ed Music, individually and as representatives of the City of Harrodsburg, filed a cross-appeal claiming that the trial court erred in its determination that Walters was a "prevailing party" within the meaning of 42 U.S.C. § 1988. Having concluded that the trial court properly found Walters to be a "prevailing party," but that the trial court failed to provide a sufficient basis for reducing the amount Walters claimed for attorney's fees, we affirm in part, vacate in part, and remand.

The attorney's fees awarded in this case stem from two sets of complaints filed against Walters and Jerry Royalty, a former member of the City Commission.[1] Walters was elected Mayor of the City of Harrodsburg in 1998. As Mayor, Walters presided over the City Commission[2] which consisted of appellees, Hood, Campbell, and Springate, and Royalty. As a result of complaints filed against Walters and Royalty, the City Commission held an evidentiary hearing on March 10, 2000,[3] after which it decided to file formal charges of official misconduct against Walters and Royalty. The Commission filed seven joint charges against Walters and Royalty, two charges against Royalty alone, and one charge against Walters alone. The Commission also voted to hold a separate hearing pursuant to KRS 83A.040(9) for the purpose of determining if the charges warranted removing Walters and Royalty from office.[4] Prior to the removal hearing, the Commission held a hearing on March 20, 2000, for the purpose of discussing the voting procedures required for a removal action, at which time Walters and Royalty were informed that they would not be allowed to vote on the seven joint charges that had been filed against them.

Consequently, on April 7, 2000, Walters filed a complaint for declaration of rights and injunctive relief in the Mercer Circuit Court pursuant to 42 U.S.C. § 1983. Walters sought both temporary and perma-

---

1. The complaints by appellees Hembree and Kelty concerned their claims that Walters had unfairly criticized their job qualifications and their job performance.

2. *See* Kentucky Revised Statutes (KRS) 83A.150(3).

3. Walters and Royalty were both present at the hearing.

4. Commissioners Hood, Campbell, and Springate voted in favor of holding a removal hearing with Walters and Commissioner Royalty dissenting.

nent injunctions to prohibit the appellees from conducting the proposed removal hearing. In her complaint, Walters alleged that the appellees had violated state law, in particular KRS 83A.040(9),[5] by filing joint charges against Royalty and her. Walters also raised numerous federal claims in her complaint. Walters alleged, *inter alia,* that (1) the grievances lodged against her were insufficient to warrant removal under state law because they were based on her exercise of protected speech, and as result, the hearings concerning those grievances violated state law, the First Amendment and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; (2) the notices she received concerning the hearings were inadequate, and as result, violative of state law, the Fourteenth Amendment, and 42 U.S.C. § 1983; (3) the formal charges submitted against her were insufficient, and as a result, any removal hearing on those charges would violate state law, the First Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983; (4) the Commissioners prejudged the charges to be heard at her removal hearing by way of their participation in previous hearings, and as a result, any removal hearing would violate state law, the Fourteenth Amendment, and 42 U.S.C. § 1983; and (5) precluding her from voting on the charges lodged against Royalty, and precluding Royalty from voting on the charges lodged against her

would violate the Fourteenth Amendment and 42 U.S.C. § 1983. Walters also filed a motion for a temporary injunction to prohibit the appellees from conducting a removal hearing, in which she alleged, *inter alia,* that the appellees had violated KRS 83A.040(9) by arbitrarily considering the charges against Royalty and her as joint charges, thereby excluding Royalty from voting on the charges against her, and vice versa.[6]

On April 13, 2000, the trial court entered an order denying Walters's motion for a temporary injunction,[7] reasoning that she had not demonstrated irreparable harm since "any substantive errors or mistakes may be remedied by appeal."[8] On April 21, 2000, Walters filed a CR [9] 65.07 motion for interlocutory relief in this Court, seeking emergency relief which would prohibit the Commission from holding the proposed removal hearing.[10] Walters argued that such a hearing would violate her statutory rights under KRS 83A.040(9) and KRS 83A.140(4), and her constitutional rights under Section 2 of the Kentucky Constitution and the First and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983. The Court heard Walters's motion with Royalty's motion; and on May 2, 2000, the Court entered an order granting, in part, their motions for CR 65.07 relief. The order reads, in relevant part, as follows:

---

**5.** KRS 83A.040(9) reads, in relevant part, as follows:

[A]ny elected officer, in case of misconduct, incapacity, or willful neglect in the performance of the duties of his office, may be removed from office by a unanimous vote of the members of the legislative body exclusive of any member to be removed, who shall not vote in the deliberation of his removal.

**6.** Royalty also filed a complaint requesting a declaration of rights and a motion for a tem-

porary injunction to prohibit the appellees from conducting a removal hearing.

**7.** Likewise, the trial court entered an order denying Royalty's motion for a temporary injunction.

**8.** *Citing* KRS 83A.040(9).

**9.** Kentucky Rules of Civil Procedure.

**10.** Royalty also filed a CR 65.07 motion for interlocutory relief in this Court.

Accordingly, the Court ORDERS that the motions for CR 65.07 relief be GRANTED to the extent that the City Commission of the City of Harrodsburg is PROHIBITED from preventing Commissioner Royalty from voting on Mayor Walters removal and from preventing Mayor Walters from voting on Commissioner Royalty's removal.

All other matters raised by the motions are matters which are reviewable on a judicial appeal of the Commission's removal of either officer. Accordingly, all other relief is hereby DENIED.

The Supreme Court of Kentucky granted discretionary review and on April 25, 2002, the Court rendered a published opinion affirming this Court's decision.[11] The Supreme Court concluded that since removal votes taken pursuant to KRS 83A.040(9) must be unanimous, with the exception of the charged member, the uncharged majority members of a faction of the Commission cannot be allowed to bring joint charges against members of a minority faction of the Commission. The Supreme Court reasoned that to permit such a disqualification procedure for all the charged members would allow a majority faction of the Commission to eliminate a rival minority faction of the Commission by simply joining the charges against the members of the minority faction.[12]

On May 20, 2002, Walters filed a motion in the Mercer Circuit Court pursuant to 42 U.S.C. § 1988 requesting an award for her attorney's fees and expenses incurred throughout the course of the litigation, which included her appeals before this Court and the Supreme Court. Walters sought attorney's fees in the amount of $44,100.00 and expenses in the amount of $1,234.34. More specifically, Walters stated that she had been billed for attorney's fees totaling 252 hours at a rate of $175.00 per hour and that she had incurred litigation expenses of $1,234.34. Walters provided the trial court with detailed invoices setting forth the hours for which she had been billed and an itemized list of the litigation expenses she had incurred. The appellees filed a response to Walters's motion for attorney's fees on July 16, 2002, in which they claimed that Walters was not a "prevailing party" within the meaning of 42 U.S.C. § 1988, and that the amount of attorney's fees she requested was excessive.

The trial court heard arguments on Walters's motion for attorney's fees on July 18, 2002, at which time the trial court requested that the appellees provide a summary of the cost incurred in defending the litigation. Shortly thereafter, the appellees submitted a detailed billing summary setting forth the hours and expenses incurred in defending the litigation. Specifically, the appellees stated that they were billed for a total of 108.6 hours, at a rate of $90.00 per hour for attorney services, and a rate of "$50.00 or $60.00" per hour for non-attorney professional services, totaling $9,149.00. The appellees further stated that they were billed for expenses in the amount $344.17.[13]

On September 23, 2002, the trial court entered an order awarding Walters's attorney's fees in the amount of $19,500.00. The trial court found that Walters was a prevailing party and that she was entitled to attorney's fees under state and federal

---

**11.** *See City of Harrodsburg v. Royalty,* Ky., 73 S.W.3d 618 (2002).

**12.** *Id.* at 619.

**13.** The billing invoices provided by the appellees did not include any services provided in response to Walters's motion for attorney's fees.

law.[14] The trial court went on to conclude that Walters "should be awarded [ ] attorney's fees in the amount of $19,500.00 which constitutes 130 hours of reasonable research, document preparation, and Court appearance time at the rate of $150.00 per hour."[15] The trial court found that the $45,334.34 in attorney's fees and expenses sought by Walters was "less than reasonable given the lack of complicated issues of law or fact presented in this matter." The trial court further opined that "neither the questions of law nor the facts of the case seem to be particularly complicated or convoluted."[16] This appeal and cross-appeal followed.

Walters contends the trial court considered irrelevant factors in reducing the amount of attorney's fees she was awarded, and that the trial court arbitrarily reduced the amount she requested for attorney's fees. In their cross-appeal, the appellees contend that Walters did not succeed on any of her requests for relief, and that she failed to demonstrate that she was likely to prevail on the merits of her federal claims. Consequently, the appellees insist that Walters was not a "prevailing party." Since a trial court's dis-

cretion to award attorney's fees under 42 U.S.C. § 1988 necessarily turns on whether the party seeking the award is a "prevailing party," we begin our analysis with the arguments advanced by the appellees in their cross-appeal.

■■■ An appellate court reviews an award of attorney's fees under 42 U.S.C. § 1988 for an abuse of discretion.[17] "In light of a '[trial] court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters,' an award of attorneys' fees under § 1988 is entitled to substantial deference."[18] "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made."[19] " 'A [ ] court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.' "[20]

■■■ When considering a motion for attorney's fees, a trial court must first determine whether the moving party has prevailed on a significant issue involved in the litigation.[21] The appellees contend

14. The trial court failed to reference any specific statutory provision, state or federal, under which Walters was entitled to attorney's fees.

15. In arriving at this figure, the trial court stated that it was guided by the standards set forth in *Boden v. Boden*, Ky., 268 S.W.2d 632 (1954).

16. In its order, the trial court repeatedly emphasized the fact that "the plaintiff [ ] consistently presented a greater volume of paper work than [ ] the defense."

17. *Hadix v. Johnson*, 65 F.3d 532, 534 (6th Cir.1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). We note at the outset that federal law governs the disposition of this appeal as Walters's motion for attorney's fees was brought pursuant to 42 U.S.C. § 1988.

See, e.g., *County Executive of Prince George's County v. Doe*, 300 Md. 445, 479 A.2d 352, 357–59 (1984).

18. *Reed v. Rhodes*, 179 F.3d 453, 469 n. 2 (6th Cir.1999) (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933).

19. *Romstadt v. Allstate Insurance Co.*, 59 F.3d 608, 615 (6th Cir.1995) (citing *Southward v. South Central Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir.1993)).

20. *Romstadt*, 59 F.3d at 615 (quoting *Southward*, 7 F.3d at 492).

21. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. (" '[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in [the] litigation which achieves some of the benefit the

that Walters is not a "prevailing party" within the meaning of 42 U.S.C. § 1988 due to the fact she did not succeed on any of her requests for relief. We disagree. The entire purpose of Walters's complaint for declaration of rights and injunctive relief and subsequent motion for interlocutory relief in this Court was to thwart the appellees' attempt to remove her from office. As the United States Supreme Court stated in *Farrar v. Hobby*,[22] a plaintiff is deemed to have prevailed "when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."[23] Under this standard, there can be no doubt but that Walters prevailed within the meaning of 42 U.S.C. § 1988 given the outcome she obtained as a result of the Supreme Court's decision in *Royalty, supra*. As previously discussed, the Supreme Court concluded that since removal votes taken pursuant to KRS 83A.040(9) must be unanimous, with the exception of the charged member, the uncharged majority members of a faction of the Commission cannot be allowed to bring joint charges against members of a minority faction of the Commission.[24] This is precisely the relief Walters sought in her CR 65.07 motion for interlocutory relief, in which she alleged, *inter alia*, that the appellees had "blatantly violated ... KRS 83A.040(9) ... by arbitrarily considering all the charges against [her] and Commissioner Royalty as 'joint charges' and, thereby, excluding Commissioner Royalty from any vote on the so-called 'charges' against [her], and by excluding [her] from any vote or decision relative to the so-called 'charges' against Commissioner Royalty."[25]

Notwithstanding, the appellees persist that Walters was not entitled to an award of attorney's fees because she failed to demonstrate that she was likely to prevail on the merits of her federal claims. Once again, we disagree. It is well-established that success on a § 1983 claim is not necessary for a plaintiff to be considered a prevailing party under § 1988.[26] As the Supreme Court noted in *Dawson v. Birenbaum*:[27]

> [A] number of state courts have awarded fees where both state and federal constitutional claims were pleaded, but where only the state claim was resolved. To decide whether § 1988 fees may be awarded, many state courts have borrowed the test federal courts use to determine whether they have pendant jurisdiction of state law claims. Under the prevailing test, § 1988 fees may be awarded to a party who prevails on a state law claim pleaded in conjunction with a "substantial" federal constitutional claim if the constitutional and the state law claims arise out of a "common nucleus of operative fact" [citations omitted].[28]

parties sought in bringing suit'" [citation omitted]).

**22.** *506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).*

**23.** *Id.* at 111–12, 113 S.Ct. 566.

**24.** *Royalty*, 73 S.W.3d at 619.

**25.** As previously discussed, this Court granted Walters's CR 65.07 motion for interlocutory relief, in part, on May 2, 2000.

**26.** *See, e.g., Maher v. Gagne*, 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653, 663 (1980).

**27.** Ky., 968 S.W.2d 663 (1998).

**28.** *Id.* at 666. *See also Davis v. Everett*, 443 So.2d 1232, 1235–36 (Ala.1983).

A clear reading of the allegations set forth in Walters's complaint for declaration of rights and injunctive relief and motion for a temporary injunction reveals that her state law claims arose out of the same "nucleus of operative fact" as her federal constitutional claims. Thus, the only question left unresolved appears· to be whether her federal claims were "substantial." In *Hagans v. Lavine*,[29] the United States Supreme Court catalogued the various tests for insubstantiality under federal law. The Court noted, *inter alia,* that a claim is insubstantial only if it is " 'obviously without merit,' " " 'essentially fictitious,' " or if " 'its unsoundness so clearly results from [ ] previous [judicial decisions] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' "[30] Under this standard, we simply cannot conclude that the federal constitutional claims raised by Walters in her complaint were insubstantial. Thus, we hold that Walters has met the status of a "prevailing party" under 42 U.S.C. § 1988.[31] The Mercer Circuit Court is affirmed on the cross-appeal.

We now turn to Walters's contention that the trial court considered irrelevant factors in reducing the amount of attorney's fees awarded in the case *sub judice.* Pursuant to 42 U.S.C. § 1988, a trial court may, in its discretion, award the prevailing party a reasonable attorney's fee in any proceeding brought to enforce a provision of 42 U.S.C. § 1983.[32] In *Hensley, supra,*

---

**29.** 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

**30.** *Id.* at 536–38.

**31.** The appellees further contend that the trial court erred by impermissibly combining our Supreme Court's holding in *Dawson, supra* with the preliminary relief decisions to find that Walters was a "prevailing party" within the meaning of 42 U.S.C. § 1988. The appellees argue that applying *Dawson* to the present set of facts would "encourage attorneys to plead federal civil rights claims, to pursue injunctive relief based solely on state law, to forego the remainder of their claims if preliminary relief is granted, and then to request attorney['s] fees for that preliminary success based solely on state law." As the Supreme Court noted in *Dawson,* the potential for abuse under the statute can be avoided by limiting awards of attorney's fees to cases in which a "substantial" federal constitutional claim has been pled in conjunction with a prevailing state law claim. *Dawson,* 968 S.W.2d at 668. Moreover, the Court further noted that "a prevailing party should ordinarily be awarded § 1988 attorney's fees unless there are special circumstances making such an award unjust" [citations omitted]. *Id.* We are unpersuaded that any special circumstances exist under the present set of facts that would render an award of attorney's fees unjust. In sum, we are of the opinion that the reasoning employed by the

Supreme Court in *Dawson* applies with equal force to the case *sub judice.*

**32.** 42 U.S.C. § 1983 provides, in relevant part, that:

> [Any] person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

The law is well-settled that § 1983 claims can be brought in state court. *See e.g., Maine v. Thiboutot,* 448 U.S. 1, 3, 100 S.Ct. 2502 n. 1, 65 L.Ed.2d 555 (1980). *See also Scott v. Campbell County Board of Education,* Ky. App., 618 S.W.2d 589, 590 (1981) ("[n]umerous courts have held that state courts exercise concurrent jurisdiction with federal district courts over cases arising under 42 U.S.C. § 1983 and related civil rights statutes" [citations omitted] ). *But see Martinez v. California,* 444 U.S. 277, 284 n. 7, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) ("[w]e have never considered, however, the question whether a State *must* entertain a claim under § 1983" [emphasis original] ).

the United States Supreme Court noted that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." [33]  This amount, which is commonly referred to as the lodestar,[34] is then adjusted to reflect the "results obtained." [35]  As the United States Court of Appeals for the Sixth Circuit noted in *Wayne v. Village of Sebring*:[36]

> This involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" [37]

■  Walters claims the trial court was required to apply the factors set forth by the United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*,[38] in determining the number of reasonable hours expended on her case.  We disagree.  In *Northcross v.*

*Board of Education of Memphis City Schools*,[39] the Sixth Circuit expressly rejected the "check-list" approach to attorney's fees determinations set forth in *Johnson*.  The Sixth Circuit concluded that a trial court need only consider the hours of service provided (and whether those hours were reasonable under the circumstances) and a reasonable rate of compensation.[40]  The Sixth Circuit noted that such an approach "will take into account all the relevant factors, and will lead to a reasonable result." [41]  Consequently, the trial court in the case *sub judice* was not required to follow *Johnson*.[42]

Walters next contends that the trial court arbitrarily reduced the amount she requested for attorney's fees.  As previously discussed, Walters submitted a bill for attorney's fees and expenses totaling $45,334.34.[43]  In its order awarding attorney's fees, the trial court concluded that Walters "should be awarded [ ] attorney's fees in the amount of $19,500.00 which constitutes 130 hours of reasonable research, document preparation, and Court

---

33. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933.

34. *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 568, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

35. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

36. 36 F.3d 517, 531 (6th Cir.1994).

37. *Id.* (quoting *Hensley* 461 U.S. at 434, 103 S.Ct. 1933).

38. 488 F.2d 714, 717–19 (5th Cir.1974).

39. 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

40. *Id.* at 636–39.

41. *Id.* at 642.  *See also Murphy v. International Union of Operating Engineers*, 774 F.2d 114, 127–28 (6th Cir.1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986).  In her brief, Walters cites several

cases from various Federal Circuits which have adopted the factors set forth by the Fifth Circuit Court of Appeals in *Johnson*.  We fail to see the relevance of these cases, however, as the Sixth Circuit has clearly expressed its reticence towards the approach set forth in *Johnson*.

42. Walters also takes issue with the trial court's reliance on *Boden, supra*.  Given our conclusion that federal law governs any attorney's fees awarded pursuant 42 U.S.C. § 1988, we are inclined to agree with Walters that the trial court should have applied federal law on this issue.  Notwithstanding, we do not believe the trial court's reliance on *Boden* created an impermissible deviation from the approach for setting attorney's fees employed by the Sixth Circuit.

43. Specifically, Walters stated that she was billed for 252 hours at a rate of $175.00 per hour and that she was billed for expenses totaling $1,234.34.

appearance time at the rate of $150.00 per hour." [44] The trial court found that the $45,334.34 in attorney's fees and expenses sought by Walters was "less than reasonable given the lack of complicated issues of law or fact presented in this matter." The trial court further opined that "neither the questions of law nor the facts of the case seem to be particularly complicated or convoluted."

 In *U.S. Structures, Inc. v. J.P. Structures, Inc.,*[45] the Sixth Circuit held that a trial court "must 'provide a concise but clear explanation of its reasons' " for an award of attorney's fees in order to facilitate proper appellate review.[46] The Court further noted that " '[a trial] court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why.' " [47] Aside from the conclusory finding that the attorney's fees sought by Walters were unreasonable given the lack of complicated issues of law or fact presented, the trial court failed to articulate with any degree of particularity why it excluded 122 hours from Walters's request for attorney's fees. The trial court stated that it had "attempt-

ed to analyze the billing patterns with little success"[;] however, we conclude that the billing invoices provided by Walters are sufficiently detailed so as to allow the trial court to make an assessment as to the reasonableness of the hours requested. Consequently, we must vacate the trial court's order and remand this matter for the trial court to clarify, "with some degree of particularity" which hours are to be disallowed and why.

Based on the foregoing reasons, the order awarding Walters's attorney's fees in the amount of $19,500.00 is affirmed in part, vacated in part, and this matter is remanded to the Mercer Circuit Court for further proceedings consistent with this Opinion.

ALL CONCUR.

---

**44.** The Court opined that $150.00 per hour was a reasonable "market rate" for the services provided by Walters's attorneys. As the appellees point out in their brief, Walters has not raised any arguments concerning the hourly rate set by the trial court in the case *sub judice.* Likewise, the appellees do not contest the hourly rate set by the trial court. Consequently, we need not determine whether the trial court erred in making this factual determination. No appeal having been filed on this issue, the trial court's finding of an attorney's fee rate of $150.00 per hour becomes the "law of the case."

**45.** 130 F.3d 1185 (6th Cir.1997).

**46.** *Id.* at 1193 (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933).

**47.** *Id.* (quoting *Wooldridge v. Marlene Industries Corp.,* 898 F.2d 1169, 1176 (6th Cir. 1990)). *See also Northcross,* 611 F.2d at 637 ("if a [trial] court decides to eliminate hours of service adequately documented by the attorneys, it must identify those hours and articulate its reasons for their elimination"); and *Wayne,* 36 F.3d at 533.